1
2
3
4
5
6           **IN THE UNITED STATES DISTRICT COURT**

7             **FOR THE DISTRICT OF ARIZONA**

8
Marcus DeWayne Burgess,                    )        No. CV-12-01569-PHX-FJM (SPL)
9                                          )
                      Petitioner,          )
10                                         )        **REPORT AND RECOMMENDATION**
                                           )
11   vs.                                   )
                                           )
12                                         )
     Charles L. Ryan, et al.,              )
13                                         )
                      Respondents.         )
14                                         )
   _____)
15

16   TO THE HONORABLE FREDERICK J. MARTONE, SENIOR UNITED STATES DISTRICT JUDGE:

17         Petitioner Marcus DeWayne Burgess has filed a *pro se* Petition for Writ of Habeas

18   Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1).[1]

19                              **BACKGROUND**

20         On March 22, 2005, Petitioner was indicted by a grand jury in the Maricopa

21   County Superior Court ("Superior Court"), Case No. CR 2005-007518, on two counts of

22   aggravated assault, and one count of endangerment as follows:

23

24   _____

25   [1]      At the time of filing his petition, Petitioner was confined in the Arizona State
     Prison Complex-Tucson, in Tucson, Arizona (Doc. 1), and has since been released (Doc.
     16). *See Bailey v. Hill*, 599 F.3d 976, 978-79 (9th Cir. 2010) (because custody is a
26   statutory jurisdictional prerequisite, a federal court may only consider a habeas petition if
     the petitioner was in custody at the time of filing of the petition). Petitioner, however, is
27   subject to a term of supervised release. (Doc. 10-4 at 103, Exh. L.) *See Matus-Leva v.
     United States*, 287 F.3d 758, 761 (9th Cir. 2002) (a person subject to supervised release is
28   in custody).

COUNT 1:

> MARCUS DWAYNE BURGESS, on or about the 12th day of December, 2004, using a motor vehicle, a deadly weapon or dangerous instrument, intentionally, knowingly or recklessly caused a physical injury to TIMOTHY AHUMADA…

COUNT 2:

> MARCUS DWAYNE BURGESS, on or about the 12th day of December, 2004, using a motor vehicle, a deadly weapon or dangerous instrument, intentionally, knowingly or recklessly caused a physical injury to CARLOS BURGESS…

COUNT 3:

> MARCUS DWAYNE BURGESS, on or about the 12th day of December, 2004, recklessly endangered KATHLEEN PRICE with a substantial risk of imminent death …

(Doc. 10-1, Exh. A.) Following a jury trial, on January 25, 2007, Petitioner was found guilty on all three counts. (Doc. 10-4, Exh. K.) Petitioner filed a Motion for New Trial on February 8, 2007. (Doc. 10-4, Exh. L.)[2] On April 6, 2007, the Superior Court denied the motion and sentenced Petitioner to concurrent terms of 7.5 years of incarceration on each count of aggravated assault and 2.25 years of incarceration on the count of endangerment. (Doc. 10-4 at 103, Exh. L.) In a memorandum decision, the Arizona Court of Appeals summarized the facts of the case as follows:

> At approximately 2:00 a.m. on December 12, 2004, [Petitioner's] car was hit by Timothy A.'s truck in an intersection. [Petitioner] was charged with two counts of aggravated assault with respect to Timothy A. and one of the passengers in his car, who were more seriously injured. He was charged with one count of endangerment with respect to another passenger in his car who was not seriously injured….
>
> Which driver was at fault in the accident depended entirely on which driver had run a red light. Timothy A. testified that he

---

[2]    *See* http://www.courtminutes.maricopa.gov/docs/Criminal/042007/m2630807.pdf (last visited August 29, 2013). *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) (a court may take judicial notice of "matters of public record outside the pleadings."); *Wyatt v. Terhune,* 315 F.3d 1108, 1114 & n. 5 (9th Cir. 2003) (public records may be judicially noticed to show that a judicial proceeding occurred or that a document was filed in another court case); *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).

2

1

2

3

4

5

> had a green light, and Kathleen P., a passenger in [Petitioner's] car who had not known [Petitioner] prior to that night, testified that [Petitioner] had a red light. [Petitioner] did not testify, and [Petitioner's] other passenger, his cousin, did not testify. The State's accident reconstructionist determined who was at fault solely on the basis of the observations of the two witnesses. He testified that if their statements were discounted, there would be no basis upon which to determine fault….

6

7

(Doc. 10-4 at 177-178, Exh. O); *State v. Burgess*, No. 1 CA-CR 07-0374, 2008 WL 3823685, at *1 (Ariz. Ct. App. Aug. 12, 2008).

8

9

10

11

12

13

14

15

16

17

Petitioner filed a Motion to Vacate Judgment on April 24, 2007, which was denied by the Superior Court on June 4, 2007. (Doc. 10-5 at 185, Exh. T.)[3] Petitioner appealed his judgment to the Arizona Court of Appeals ("Appellate Court"), and filed an opening brief on or about December 20, 2007. (Doc. 10-4, Exh. M.) On appeal, Petitioner argued, through counsel, that he was denied a fair trial due to prosecutorial misconduct, asserting that the prosecutor had used false testimony and untruthful arguments at trial. (Doc. 10-4, Exh. M, O.)  (Doc. 10-4, Exh. O.) In a memorandum decision filed on August 12, 2008, the Appellate Court affirmed Petitioner's convictions and sentences. (Doc. 10-4, Exh. O.) Petitioner did not seek review of the decision by the Arizona Supreme Court. (Doc. 1 at 3.)

18

19

20

21

22

23

24

25

26

Prior to the issuance of the Appellate Court's decision, on May 10, 2007, Petitioner filed a *pro se* Notice of Post-Conviction Relief. (Doc. 10-4, Exh. Q.) Pursuant to Petitioner's request, the post-conviction relief proceeding was dismissed on August 23, 2007. (Doc. 10-4, Exh. R.) On September 9, 2008, Petitioner filed a second Rule 32 Notice of Post-Conviction Relief. (Doc. 10-4, Exh. S.) Petitioner, through counsel, filed a Petition for Post-Conviction relief on December 4, 2009. (Doc. 10-5, Exh. T.) The petition presented three claims: (1) trial counsel was ineffective because he failed to introduce evidence and expert testimony to impeach Timothy Ahumada, by showing that he was impaired at the time of the collision; (2) trial counsel was ineffective because he

27

28

---

[3]   *See also*   http://www.courtminutes.maricopa.gov/docs/Criminal/062007/m2701703.pdf   (last visited August 29, 2013).

allowed a plea offer to expire without arranging for petitioner to accept the plea; and (3) trial counsel was ineffective because he failed to call Petitioner's cousin, Carlos Burgess, to testify as a witness at trial. (Doc. 10-5 at 2-11, Exh. T; Doc. 10-5, Exh. AA.) On May 12, 2010, Petitioner filed a supplement to the petition, containing an expert opinion report from toxicologist Michael P. Grommes. (Doc. 10-5, Exh. V.) On July 6, 2010, the Superior Court found that Petitioner had not shown good cause for untimely filing the supplement, and struck it from consideration. (Doc. 10-5, Exh. AA.) The Superior Court further dismissed the petition for post-conviction relief, finding that Petitioner had failed to present a colorable claim. (*Id.*) [4]

Petitioner, through counsel, appealed the decision to the Appellate Court on August 5, 2010, presenting one ground for review, that the Superior Court "abused its discretion when it found that Burgess failed to present a colorable claim regarding his lost opportunity to enter into a plea offer." (Doc. 10-5 at 300, Exh. BB.) On March 28, 2012, the Appellate Court summarily denied review. (Doc. 10-5, Exh. CC.) Petitioner filed a Petition for Review in the Arizona Supreme Court (Doc. 10-5, Exh. DD), which was summarily denied on June 20, 2012 (Doc. 10-5, Exh. EE).

Petitioner filed the instant Petition for Writ of Habeas Corpus on July 20, 2012. (Doc. 1.) Respondents filed an Answer (Doc. 10), to which Petitioner filed a Reply (Doc. 15).

## DISCUSSION

In his Petition for Writ of Habeas Corpus, Petitioner raises four grounds for relief. Respondents argue in their Answer that Petitioner failed to exhaust his claims in Grounds One, Two, and Four, and those claims are procedurally barred. Respondents further argue

---

[4]     Although not cited by either Petitioner or Respondents, the Court further notes that prior to the Appellate Court's decision, on February 28, 2011, Petitioner, proceeding *pro se,* filed a third Notice of Post-Conviction Relief, in which he argued ineffective assistance of post-conviction relief counsel. (Doc. 10-5, Exh. FF.); http://www.courtminutes.maricopa.gov/docs/Criminal/032011/m4635112.pdf (last visited August 29, 2013). On March 14, 2011, the Superior Court dismissed the proceeding, finding that Petitioner had failed to state a claim for which relief could be granted to excuse the untimely Rule 32 notice. (*Id.*)

that although Petitioner exhausted his claim in Ground Three, it fails on its merits. In response, Petitioner concedes that his claims are unexhausted but argues that they should not be barred from review. For the reasons that follow, the Court concludes that Petitioner's claims are either procedurally barred from review or fail on their merits, and will recommend that the petition be denied.

## I. Applicable Law

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a State court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[5] 28 U.S.C. § 2244.

### A. Standard for Habeas Relief

Under AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits[6] in State court proceedings" unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In applying these standards, the federal habeas court reviews "the last reasoned state court decision addressing the claim in question." *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). "Where a state court's decision is unaccompanied by an explanation," the petitioner bears the burden to show that "there was no reasonable basis for the state court to deny relief" under 28 U.S.C. § 2254(d). *Harrington v. Richter*, __ U.S. __, 131 S.Ct.

---

[5] The AEDPA applies only to those cases that were filed after its effective date, April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

[6] The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).

770, 784 (2011).

Under 28 U.S.C. § 2254(d)(1), "clearly established Federal law" refers to holdings of the Supreme Court in effect at the time the state court rendered its decision. *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but applies that rule to the facts of a particular case in an objectively unreasonable manner. *Williams*, 529 U.S. at 407-408; *Lockyer v*, 538 U.S. at 75. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.

Under 28 U.S.C. § 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). *See Maxwell v. Roe*, 628 F.3d 486, 500 (9th Cir. 2010), *cert. denied,* __ U.S. __, 132 S.Ct. 611 (2012); *Davis v. Woodford*, 384 U.S. 628, 638 (9th Cir. 2004). "[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding

unreasonable." *Milke v. Ryan*, 711 F.3d 998, 1008 (9th Cir. 2013) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

## B.   Exhaustion and Procedural Bar

A federal court may not grant habeas relief under AEDPA if the petitioner has failed to exhaust his claim in state court. 28 U.S.C. § 2254(b)(1) & (c)*; see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). "[A] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

First, a petitioner must present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan*, 526 U.S. at 848.  A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. "[C]laims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them" either on direct appeal or through appropriate post-conviction relief.  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Second, if a petitioner fails to invoke the required procedure, exhaustion is not satisfied even if the petitioner raises the claim through an alternative procedure. *See e.g., Roettgen,* 33 F.3d at 38 (holding that petitioner failed to exhaust state remedies when he presented claim in the state habeas petition instead of Arizona Rule 32 post-conviction proceeding).

In addition to presenting a claim in the proper forum and vehicle, to satisfy the exhaustion requirement, "a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan*, 711 F.3d 1026, 1041 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582-83 (9th Cir. 2009). *See also Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir. 1994), *overruled on other*

*grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).  In presenting the factual basis of a claim, a petitioner need not present "every piece of evidence supporting his federal claims," but must "provide the state court with the operative facts, that is, all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies." *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (internal quotation marks and citation omitted); *Baldwin v. Reese,* 541 U.S. 27, 28 (2004). In presenting the legal basis of a claim, a petitioner must alert the state court to the fact that he is asserting a federal claim and cite to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001) ("Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (finding "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial" is insufficient); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (finding a mere reference to the "Constitution of the United States" does not preserve a federal claim).

If a petitioner fails to fairly and fully present his federal claim in state court, and returning to state court would be "futile" because the state courts' procedural rules would bar consideration of the claim, the claim is procedurally defaulted and is barred from federal review. *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). *See State v. Mata*, 916 P.2d 1035, 1048-53 (Ariz. 1996); Ariz. R. Crim. P. 32.2(a) & (b); 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R.

Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

A claim may also be procedurally defaulted and barred from federal review if it was actually raised in state court, but found by that court to be defaulted on an adequate and independent state procedural ground, such as waiver or preclusion. *Beard v. Kindler*, 558 U.S. 53 (2009); *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991). Arizona courts have been consistent in their application of procedural default rules. *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz. R. Crim. P. 32.2(a) is an adequate and independent procedural bar); *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and consistently applied, so it is adequate to bar federal review of a claim."); *Cook v. Schriro*, 538 F.3d 1000, 1026 (9th Cir. 2008).

A procedurally defaulted claim may not be barred from federal review "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones*, 691 F.3d at 1101 (quoting *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546). *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners as well as to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook*, 538 F.3d at 1027 (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish cause, the court need not reach whether he suffered actual prejudice. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook*, 538 F.3d at 1028 fn. 13. Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

## II.   Petitioner's Claims

In Ground One, Petitioner argues that the Superior Court deprived him of his right to a defense when it excluded evidence in violation of his right to due process under the Fourteenth Amendment. (Doc. 1 at 6.) Petitioner also argues in Ground One that he received ineffective assistance of trial counsel because counsel failed to timely respond to the State's motion in limine, resulting in the omission of evidence essential to his defense. In Ground Two, Petitioner argues that he received ineffective assistance of trial counsel because counsel's advice improperly led him to reject a plea agreement which offered a lesser sentence than the one he received following trial. In Ground Three, Petitioner argues that he was denied a fair trial due to prosecutorial misconduct. Lastly, in Ground Four, Petitioner argues that he received ineffective assistance of trial counsel because counsel failed to timely respond to the motion in limine and present an expert witness, which resulted in the exclusion of evidence essential to his defense. As set forth below, the Court concludes that Petitioner's claims are procedurally barred from federal

review or lack merit, and will recommend that all four grounds be denied.

The Court observes as a preliminary matter that each of Petitioner's claims stem from the contention that Timothy Ahumada ("Ahumada") was intoxicated and impaired at the time of the collision. The relevant events are summarized by the Appellate Court as follows:

> Redaction of Timothy A.'s Medical Records
>
> ¶ 4 Well in advance of the trial, the State filed a pretrial motion in limine to preclude any evidence that Timothy A. had drugs or alcohol in his system at the time of the accident. The defense did not file a written response to the motion. The court heard argument on the motion after the process of jury selection had begun. The court agreed with Defendant that Timothy's alleged impairment was relevant because it went to the reliability of his testimony regarding the color of the light. The court ruled, however, that particular parts of Timothy's medical records could not come into evidence. In particular, one of the medical records showed that when Timothy was taken to the hospital, he had a blood alcohol level of 117 mg/dl. Next to this number, there were two footnotes. One explained that a number greater than 80 mg/dl is the "legal toxication level in Arizona" and that a number greater than 300 mg/dl is "medically toxic." The other stated that the test result was "not valid for legal purposes" and "intended for medical purposes only." In addition, the record indicated that Timothy tested positive for "cannabinoids." The court and the attorneys were confused because in another column labeled "reference" there was an indication of "[negative]" for cannabinoids. The court found this rendered the record "internally inconsistent," though the "reference" column appears to simply indicate what a normal reading for various substances and blood components would be. Nonetheless, it was unclear what the significance of the positive finding was. There was an asterisk next to the result that was not explained anywhere in the document. In addition, the positive finding was not quantified in any way, and there was no way of knowing whether a positive reading meant Timothy was necessarily impaired at the time of the accident or only that, for instance, he smoked one marijuana cigarette two days prior. The defense attorney also wanted to introduce into evidence medical records indicating that Timothy was administered Narcan, which the defense attorney claimed was ordered "to counteract [the alcohol and marijuana] [so] that he could be rushed into surgery."
>
> ¶ 5 Most of the hearing focused on the record as it pertained to cannabinoids. But with respect to both that positive result and the blood alcohol reading, the court found that "we do not have the type of results in this medical record that we would have if you were using this normally in a case to try to prove

what someone's blood/alcohol content was that someone was testing positive for some substance, et cetera." The trial court found that without a medical person on the witness list who could explain what the records meant and attest to their reliability, they could not be admitted. Because jury selection had already begun, the court would not allow the defense to pursue adding to its witness list at that late point in the process. Defendant would be allowed to question Timothy A. about whether he had alcohol or other drugs in his system, but the medical records were redacted so that alcohol and cannabinoids were not even listed on the chart-making it appear that he was not tested for these substances and, in effect, as though no one ever is. All of the drugs for which Timothy tested negative were listed.

Timothy's Testimony at Trial

¶ 6 Timothy testified that he spent the day of December 11, 2004 across the street at a friend's house and had one beer there at about 4:30 in the afternoon. He testified that he then went home and "hung out for a while" before going to a party at 7:30 or 8:00. He further testified that he had one beer at the party and that he had that beer "[r]ight when [he] got there." According to his account, he left the party before 10:00, dropped his girlfriend off at her house, went back to his house to change clothes because they were going to go to another club, went back to her house, decided to stay in and watch a movie instead, fell asleep during the movie, woke up at 1:30 or 1:45, and was on his way home when he was in the accident. He also testified that on the Friday before the accident, which occurred early Sunday morning, he and seven friends shared one marijuana cigarette.

(Doc. 10-4 at 178-181, Exh. O); *State v. Burgess*, No. 1 CA-CR 07-0374, 2008 WL 3823685, at *1-2 (Ariz. Ct. App. Aug. 12, 2008).

### A.   Right to a Defense Claim

In Ground One, Petitioner argues that his right to due process under the Fourteenth Amendment was violated by the Superior Court's exclusion of medical records, particularly the "Patient Discharge Summary Report," which reports Ahumada's blood alcohol concentration. (Doc. 1 at 6.) Petitioner essentially contends that he was deprived of his right to a defense because this evidence "was crucial to his case and … would have affected the outcome of the trial" (*Id.*)

As he concedes, Petitioner did not present this claim to the state courts. (Doc. 1 at 6.) Explicitly cited by the Appellate Court on direct appeal, Petitioner "d[id] not

challenge the exclusion of the medical records but rather argue[d] that the prosecutor knowingly presented false testimony when Timothy A. testified that he only had two beers the day of the accident." (Doc. 10-4 at 181, Exh. O.) Further, a return to state court to present this unexhausted claim would be futile under Arizona's procedural rules. The time has passed to seek post-conviction relief in state court under Rule 32.4(a) of the Arizona Rules of Criminal Procedure, and Petitioner has not shown that any of the exceptions to the time limits under Rule 32.1 would apply to him. Therefore, this claim is technically exhausted and procedurally defaulted.

Petitioner argues that the Court should excuse this default because he received ineffective assistance of appellate counsel who failed to properly raise this claim on direct appeal. He contends that appellate counsel felt the "prosecutorial misconduct argument... was so strong the case would be overturned." (Doc 1 at 6.) Because Petitioner did not challenge appellate counsel's performance in state post-conviction relief proceedings, Petitioner has not demonstrated cause to overcome his default. A claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *See Murray*, 477 U.S. at 489; *see also Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000) (holding that ineffective assistance of counsel claim can be procedurally barred even when asserted as cause to excuse another procedural default).

Petitioner has also not established that prejudice resulted from the Superior Court's exclusion of the unredacted medical records, because the record does not compel that their admission would have resulted in a different outcome. The jury had ample reason before it to question the reliability of Ahumada's testimony concerning the color of the traffic light at the time of the collision without the medical records. Ahumada testified at trial about his alcohol and drug usage prior to the collision, and admitted to use of both substances. (Doc. 10-2, Exh. G.) He was cross-examined by defense counsel, who elicited other evidence to impeach his credibility. The jury was offered that in contradiction to his testimony, following the collision, Ahumada had admitted to hospital

13

staff that he drank "four to five beers" (Doc. 10-2 at 37, Exh. G), that he had been "drinking heavily" (Doc. 10-2 at 39, Exh. G), and that during the collision he was "the passenger in [the] motor vehicle" (Doc. 10-2 at 39, Exh. G). Further, any possible prejudicial value which can be attributed to the excluded lab report is significantly diminished by the fact that Petitioner has not established its probative value. The expert opinion offered by Petitioner does not definitively show that the lab report was reliable, that Ahumada was impaired at the time of the collision, or that his account of the collision was implausible. (Doc. 10-5, Exh. V.) Rather, the toxicologist only opined that "*[i]f* [the report] is representative of Mr. Ahumada's blood alcohol concentration at the time of the accident, he would have been impaired… *Possible symptoms* are… impairment of memory and perception, increase in reaction time, and visual impairment." (Doc. 1-1 at 2; Doc. 10-5 at 265-266, Exh. V.) Beyond his intoxication, it was apparent to the jury that Ahumada's credibility would be at issue from the onset of trial. Ahumada, as the other party to the collision, necessarily had a vested interest in attributing any culpability for the accident to Petitioner.

Lastly, Petitioner has not demonstrated that review of the merits of this claim is necessary to prevent a fundamental miscarriage of justice. Even if evidence was presented a trial which unequivocally established that Ahumada was impaired at the time of the collision, it does not compel that no juror, acting reasonably, would have voted to find Petitioner guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 329. At trial, neither Petitioner nor his cousin testified. Instead, Ahumada and Price were the only witnesses who testified regarding the color of the traffic light at the time of the collision, and both offered accounts adverse to Petitioner's defense. (Doc. 10-2, Exh. G, H.) As discussed above, Ahumada was cross-examined and his testimony was shown to be inconsistent with other evidence admitted at trial. Similarly, as highlighted in Petitioner's reply (Doc. 15 at 5), Price was cross-examined and her testimony was shown to be inconsistent with other evidence admitted at trial. (Doc. 10-2, Exh. G, H.) To this end, the inconsistencies in the witnesses' testimonies were apparent, and there is no reason to

14

believe that in arriving at the verdict, the jury necessarily found either one of them wholly credible. Consequently, Petitioner has not offered any compelling basis to conclude that had the unredacted lab report been presented, which was also inconclusive, that the jury would have arrived at a different verdict. Because Petitioner has failed to show that cause precluded him from properly presenting this claim in state courts, actual prejudice resulted from the alleged constitutional violation, or that a fundamental miscarriage of justice would result if the claim were not heard on the merits, the Court will recommend that this claim be denied.

**B.    Prosecutorial Misconduct Claim**

In Ground Three, Petitioner argues that he was denied a fair trial resulting from prosecutorial misconduct. (Doc. 1 at 8 (citing *U.S. v. LaPage*, 231 F.3d 488 (9th Cir. 2000) and *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005)).) Petitioner argues that the prosecutor elicited false testimony from Ahumada at trial, including that "he had only one drink six to seven hours before the accident," knowing the testimony to be false based upon the excluded lab results. (*Id.*)

Contrary to Respondents' concession, Petitioner did not fairly present this *federal* claim to the state courts. (*See* Doc. 10 at 16.) Although Petitioner, through appellate counsel, cited the Fourteenth Amendment for the proposition that "[t]he United States and Arizona Constitutions entitle criminal defendants to due process," he did not present a *Napue*[7] violation or any other federal claim of prosecutorial misconduct in state court. "Mere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (quoting *Hiivala*, 195 F.3d at 1106). Exhaustion "demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." *Castillo*, 399 F.3d at 1003. Outside of the citation to the

---

[7]    *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (holding that a conviction violates a defendant's due process rights when it is obtained by the state's knowing presentation of false testimony). *See Hayes*, 399 F.3d at 980 (discussing whether State's actions had violated *Napue*); *LaPage*, 231 F.3d at 491 (same).

Fourteenth Amendment, Petitioner argued exclusively state law, and his appeal was absent any language presenting his federal due process argument to the Arizona Court of Appeals. "Exclusive citation to Arizona state court cases in a counseled petition for review is not sufficient to give a 'fair opportunity' to the [state court] to decide a federal claim." *Cook*, 538 F.3d at 1029 (citing *Peterson v. Lampert*, 319 F.3d 1153, 1159 (en banc) (9th Cir. 2003). To the extent that the state standard may be similar to the federal standard for governing such prosecutorial misconduct claim, "'mere similarity' between a state claim presented in state court and the federal claim made in the habeas petition does not suffice to avoid procedural default." *Peterson*, 319 F.3d at 1159-60 (citing *Hiivala*, 195 F.3d at 1106 (9th Cir. 1999)). Because a return to state court would be futile,[8] this claim is technically exhausted and procedurally defaulted.

Even had Petitioner exhausted this claim, it fails on the merits. *See* 28 U.S.C. § 2254(b)(2); *Henry*, 720 F.3d at 1084 (court may deny the a habeas claim on the merits, even if petitioner failed to exhaust state remedies); *Runningeagle v. Ryan*, 686 F.3d 758, 777 fn. 10 (9th Cir. 2012); *Simmons v. Blodgett*, 110 F.3d 39, 41 (9th Cir. 1997) (exhaustion is not jurisdictional). Petitioner has not demonstrated that the Appellate Court's decision was contrary to clearly established federal law, was based on an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts considering the evidence presented in state court. In a memorandum decision issued on direct appeal, the last reasoned state court decision relevant to this claim, the Appellate Court found that Petitioner was not deprived of a fair trial due to prosecutorial misconduct.

> ¶ 7 On appeal, Defendant … argues that the prosecutor knowingly presented false testimony when Timothy A. testified that he only had two beers the day of the accident. He further argues that the prosecutor made an untrue statement in her closing argument when she said that there

---

[8]    A return to state court would be futile under Arizona's procedural rules. The time has passed to seek post-conviction relief in state court under Rule 32.4(a) of the Arizona Rules of Criminal Procedure, and Petitioner has not shown that any of the exceptions to the time limits under Rule 32.1 apply to him.

was no evidence that Timothy A. was impaired at the time of the accident. Because no objection was made to the testimony and the statement at trial, we review only for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005); *State v. Phillips*, 202 Ariz. 427, 437, ¶ 48, 46 P.3d 1048, 1058 (2002). Knowing use of perjured testimony by a prosecutor, however, "is a denial of due process and is reversible error without the necessity of a showing of prejudice to the defendant." *State v. Ferrari*, 112 Ariz. 324, 334, 541 P.2d 921, 931 (1975). "Prosecutors have a duty to do more than convict defendants. They have a duty to see that defendants get a fair trial." *State v. Cornell*, 179 Ariz. 314, 331, 878 P.2d 1352, 1369 (1994). The prosecution's proper interest in a case "is not that it shall win ..., but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In this case, however, we find that both of Defendant's charges are without merit.

¶ 8 Defendant argues that the prosecutor knew Timothy A.'s testimony that he had only consumed two beers the day of the accident was not true because it was contradicted by the test result. We disagree. The reason the test result was excluded was that no basis was established for accepting it as reliable. Therefore, the fact that the testimony was inconsistent with the test result does not establish that the testimony was false because it could instead be the case that the test was inaccurate.

¶ 9 Defendant further argues, however, that the testimony was inconsistent with some of the other medical records that were admitted. For instance, according to an EMS incident report, Timothy "admitted to 'heavy drinking.'" According to a consultation report done by a physician on the fifth day of Timothy A.'s hospital stay, "The patient admits to being a heavy drinker. He states that he had been drinking heavily on the night of the accident, however, he was not the driver in the truck during the accident." Defendant is quite right that this is inconsistent with Timothy's testimony. This evidence was submitted to the jury, however. The jury had exactly the same opportunity to conclude that Timothy was lying when he testified as the prosecutor did. The only additional information the prosecutor had was the results of the hospital lab tests for alcohol and cannabinoids, which the prosecutor did not know were reliable. As explained above, because the prosecutor did not know these tests were reliable, she could not conclude Timothy A.'s testimony was false based on these test results. Therefore, the jury had just as much reliable information that the testimony was false as the prosecutor did, and she did not commit misconduct by allowing Timothy A. to testify as he did and allowing the jury to come to its own conclusion as to whether that testimony was truthful given the evidence in the redacted medical records. *See Ferrari*, 112 Ariz. at 334, 541 P.2d at 931 ("It was brought out at the trial and before the jury that [the witness] had made previously inconsistent statements. The credibility of the witness was for

the jury to determine."); *State v. Reynolds*, 108 Ariz. 541, 543, 503 P.2d 369, 371 (1972) ("[T]he jurors are the triers of fact and they are free to judge the credibility of all the witnesses."); *State v. Rivera*, 210 Ariz. 188, 190, ¶ 11, 109 P.3d 83, 85 (2005) ("[C]ross-examination is the appropriate tool for probing the truthfulness of a witness's statements."); *cf. State v. Linden*, 136 Ariz. 129, 140, 664 P.2d 673, 684 (App.1983) ("The inconsistencies in the witnesses' testimonies were apparent. Therefore, the credibility to be given their testimony became a question for the jury."). In addition, Defendant could have called Timothy A.'s girlfriend, for example, to testify about his alcohol consumption that night and about whether he was impaired when he left her home. *See State v. Purcell*, 117 Ariz. 305, 308, 572 P.2d 439, 442 (1977) ("[T]he defense counsel could have interviewed the witness before trial ... and prepared to refute her testimony.").

¶ 10 Defendant also argues he was denied a fair trial because in her closing argument, the prosecutor asserted there was no evidence that Timothy A. was impaired at the time of the accident. "Wide latitude is given in closing arguments," *State v. Zaragoza*, 135 Ariz. 63, 68, 659 P.2d 22, 27 (1983), and even if this statement was not entirely true, the assertion does not rise to the level of prosecutorial misconduct. "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26, 969 P.2d 1184, 1191 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

¶ 11 Although the prosecutor's comment might have been an overstatement because the EMS incident report and the consultation report certainly suggested that Timothy A. may have been impaired, defense counsel brought up these reports in her closing argument and argued that Timothy was, indeed, impaired. There is, therefore, absolutely no reason to believe that the prosecutor's comment that there was no evidence that Timothy A. was impaired caused the jury to overlook the fact that there was. We, therefore, conclude that the prosecutor's assertion did not deny Defendant a fair trial. *See Cornell*, 179 Ariz. at 328, 878 P.2d at 1366 ("[W]e look first to determine whether counsel's actions were reasonably likely to have affected the jury's verdict, thereby denying the defendant a fair trial.").

(Doc. 10-4 at 181-185, Exh. O); *State v. Burgess*, No. 1 CA-CR 07-0374, 2008 WL 3823685, at *2-4 (Ariz. Ct. App. Aug. 12, 2008).

"A defendant's due process rights are violated when a conviction is obtained through the knowing use of false testimony." *Henry*, 720 F.3d at 1084. *See Napue*, 360

18

U.S. at 269. "A claim under *Napue* will succeed when '(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material.'" *Henry*, 720 F.3d at 1084 (quoting *Jackson v. Brown*, 513 F.3d 1057, 1071-72 (9th Cir. 2008)). In order for a petitioner to "gain habeas relief, the alleged misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Jones*, 691 F.3d at 1102 (quoting *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)).

   First, Petitioner has not shown that Ahumada's testimony was actually false. As cited by the Appellate Court "[t]he reason the test result was excluded was that no basis was established for accepting it as reliable. Therefore, the fact that the testimony was inconsistent with the test result does not establish that the testimony was false because it could instead be the case that the test was inaccurate." (Doc. 10-4 at 182, Exh. O). While Ahumada may have "made inconsistent statements, [] that is not enough for a *Napue* violation." *U.S. v. Bingham*, 653 F.3d 983, 995 (9th Cir. 2011). Again, the expert opinion offered by Petitioner does not definitively show that the lab report was reliable or that Ahumada was impaired at the time of the collision. (Doc. 10-5, Exh. V.) Further, even if the toxicologist opined that it is indisputable that Ahumada consumed more than "one drink six to seven hours before the accident," that evidence was not before the Superior or Appellate Court and was first presented in post-conviction relief proceedings. *See Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398, 1400 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *Wood v. Ryan*, 693 F.3d 1104, 1122 (9th Cir. 2012).

   Second, even if Ahumada's testimony was false, Petitioner has not shown that the prosecution knew or should have known that the testimony was actually false. As cited above, "[t]he only additional information the prosecutor had was the results of the hospital lab tests for alcohol and cannabinoids, which the prosecutor did not know were reliable… because the prosecutor did not know these tests were reliable, she could not conclude Timothy A.'s testimony was false based on these test results." (Doc. 10-4 at

183, Exh. O.)

Third, Petitioner has not demonstrated that the purported false testimony was material. "False testimony is material such that the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. The question is not whether the defendant would more likely than not have received a different verdict if the false testimony had not been presented, but whether the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Jones*, 691 F.3d at 1102 (internal citations and quotations omitted). As addressed above, Ahumada's testimony was inconsistent with evidence admitted at trial, and he was cross-examined by defense counsel who sought to impeach his credibility. The jury had reliable information with which it could determine that Ahumada's testimony was false; whether a witness lied or erred in his perceptions or judgments is a question to be addressed by cross-examination and determined by the jury. *See United States v. Zuno-Arce*, 44 F.3d 1420, 1422-23 (9th Cir. 2003).   Because Ahumada's testimony before the jury was less than credible, Petitioner has not established that there is a reasonable likelihood that, if Ahumada's testimony was false, it affected the judgment of the jury.

Lastly, the Court reiterates that the standard in a habeas case requires a court to go beyond a *de novo* review and find that the state courts' denial of Petitioner's claim was objectively unreasonable. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). For these same reasons, Petitioner has also not shown that the State courts' rejection of his prosecutorial misconduct claim was contrary to, or an unreasonable application of law, or that it was based on an unreasonable determination of the facts in light of the state court record. *See* 28 U.S.C. § 2254(d). Therefore, Petitioner does not assert a viable claim of prosecutorial misconduct and the Court will recommend that it be denied.

## C.   Ineffective Assistance of Counsel Claims

Petitioner argues in Ground One that he received ineffective assistance of trial counsel because counsel failed to timely respond to the State's motion in limine, resulting

in the omission of medical evidence which was essential to his defense. In Ground Two, Petitioner argues that he received ineffective assistance of trial counsel because counsel's advice improperly led him to reject a plea agreement which offered a lesser sentence than the one he received following trial. Lastly, in Ground Four, Petitioner argues that he received ineffective assistance of trial counsel because counsel failed to timely respond to the motion in limine and present an expert witness, resulting in the omission of medical evidence which was essential to his defense.

As he concedes, Petitioner did not present these claims to the state courts. (Doc. 1 at 6.) Although Petitioner may have presented a variation of his ineffective assistance of counsel claims to the Superior Court in post-conviction relief proceedings (*see* Doc. 10-5, Exh. T), he did not present any of these claims for review to the Appellate Court. Claims are exhausted "for purposes of federal habeas once the Arizona Court of Appeals has ruled on them" either on direct appeal or through appropriate post-conviction relief. *Swoopes*, 196 F.3d at 1010. While he petitioned the Appellate Court arguing the Superior Court had "abused its discretion when it found that Burgess failed to present a colorable claim regarding his lost opportunity to enter into a plea offer" (Doc. 10-5 at 300, Exh. BB), that claim is factually distinguishable from the one he presents here. Here, Petitioner asserts that "[p]rior to trial, the defendant was offered a plea agreement which called for a significant lower sentence than he received after trial. Defendant's attorney advised him that they could win the case and that it was a good case because of the evidence. Defendant took his attorney's advice and went to trial…" (Doc. 1 at 7.) Because Petitioner did not provide the state court with "the operative facts" of this claim, he did not fairly present it and exhaust his state remedies. *Davis v. Silva*, 511 F.3d at 1009. Because a return to state court would be futile, Petitioner's ineffective assistance of counsel claims are technically exhausted and procedurally defaulted.

Petitioner argues that the Court should excuse this default because he received ineffective assistance of counsel who failed to properly present these claims. First, Petitioner points to appellate counsel to excuse the default, arguing that he failed to raise

these claims because he felt the prosecutorial misconduct argument "was so strong the case would be overturned." (Doc. 1 at 9.) Because the proper channel to challenge counsel's performance was in a state petition for post-conviction relief, Petitioner has not demonstrated that appellate counsel's failure to raise these arguments on appeal is cause to overcome his default. "As a general rule, ineffective assistance of counsel claims should be raised in post-conviction relief proceedings pursuant to rule 32, Arizona Rules of Criminal Procedure." *Lambright v. Stewart*, 241 F.3d 1201, 1204 (9th Cir. 2001).

Next, Petitioner points to post-conviction relief counsel to establish cause to overcome the default. Petitioner argues that his claims concerning trial counsel's failure to introduce the unredacted medical records were not presented to the Appellate Court because post-conviction relief counsel failed to timely submit the expert opinion report. (Doc. 1 at 6.) "Without the evidence the issue was not included in the Petition for Review." (*Id.*) In states like Arizona, which require that ineffective assistance of trial counsel claims be raised in an initial-review collateral proceeding, failure of post-conviction relief ("PCR") counsel to raise an ineffective assistance of trial claim in that initial-review may provide cause to overcome the procedural default of such that claim. *Martinez v. Ryan*, __U.S__ 132 S.Ct. 1309, 1315 (2012). To establish cause under *Martinez,* Petitioner must show that "PCR counsel was ineffective under *Strickland*[9] for not raising a claim of ineffective assistance of trial counsel.'" *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) (quoting *Martinez*, 132 S.Ct. at 1318).

> In order to show ineffectiveness of PCR counsel, [petitioner] must show that PCR counsel's failure to raise the claim that trial counsel was ineffective was an error so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, and caused [petitioner] prejudice. Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is

---

[9]     *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984) (holding that to prevail on an ineffective assistance of counsel claim, a petitioner must show: (1) deficient performance, in that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

1

2

3

4

> meritless. Accordingly, a PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective. Further, [t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the claim has some merit.

5    *Sexton*, 679 F.3d at 1157.

6         Here, Petitioner fails to satisfy the ineffective assistance of counsel standard under

7    *Martinez*, and therefore cannot overcome the default. As reasoned above, Petitioner has

8    not shown that that if the unredacted medical records had been admitted at trial, the result

9    would have been different; therefore, Petitioner fails to demonstrate that prejudice

10   resulted from the exclusion of the evidence. Consequently, it follows that Petitioner

11   cannot demonstrate that prejudice resulted from trial counsel's failure to introduce the

12   evidence at trial.  Because Petitioner has not alleged facts that, even if true, support a

13   finding of prejudice from trial counsel's performance, the Court finds that it is not a

14   substantial ineffectiveness claim. Therefore, PCR counsel's failure the raise this claim in

15   the petition for review was not ineffective and does not provide cause to overcome the

16   procedural default.[10]  For these reasons, the Court will recommend that Petitioner's

17   ineffective assistance of counsel claims be denied.

18                                    **CONCLUSION**

19        The record is sufficiently developed and the Court does not find that an

20   evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638

21   F.3d 1027, 1041 (9th Cir. 2011)*; Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

22   Based on the above analysis, the Court finds that Petitioner's claims are either

23   procedurally barred from review or fail on their merits. The Court will therefore

24   recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed

25   with prejudice.

26
27
28

---

[10]      Because the Court concludes that Petitioner "fails to meet the *Martinez* test of substantiality as to prejudice," it does not address substantiality of the deficiency prong. *See Lopez v. Ryan*, 678 F.3d 1131, 1138 (9th Cir. 2012); *see also Leavitt v. Arave*, 682 F.3d 1138, 1140 (9th Cir. 2012) (finding no substantial ineffectiveness claims where record demonstrated no prejudice from alleged ineffectiveness).

1    **IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas

2    Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH**

3    **PREJUDICE**.

4    **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

5    leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the

6    Petition is justified by a plain procedural bar and jurists of reason would not find the

7    procedural ruling debatable, and because Petitioner has not made a substantial showing of

8    the denial of a constitutional right.

9    This recommendation is not an order that is immediately appealable to the Ninth

10   Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

11   Appellate Procedure, should not be filed until entry of the district court's judgment. The

12   parties shall have 14 days from the date of service of a copy of this recommendation

13   within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1);

14   Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file

15   a response to the objections.

16   Failure to timely file objections to the Magistrate Judge's Report and

17   Recommendation may result in the acceptance of the Report and Recommendation by the

18   district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114,

19   1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the

20   Magistrate Judge will be considered a waiver of a party's right to appellate review of the

21   findings of fact in an order of judgment entered pursuant to the Magistrate Judge's

22   recommendation. *See* Fed. R. Civ. P. 72.

23   Dated this 30th day of August, 2013.

24

25   Honorable Steven P. Logan
     United States Magistrate Judge
26

27

28

24